IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

  v.                                                                     Cr. No. 19-401-WJ-KK-1

THOMAS ABEYTA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the July 10, 2020 Order of Reference of Chief United States District Judge William P. Johnson, designating the undersigned to conduct hearings, if warranted, including evidentiary and *Faretta* hearings, *see Faretta v. California*, 422 U.S. 806 (1975), and to perform any legal analysis required to issue a written order determining: Defendant Thomas Abeyta's Unopposed Motion for Status Conference and for *Faretta* Hearing (Doc. 45), filed April 1, 2020; whether Defendant intends to waive his right to counsel and assert the right to represent himself; and, if so, whether he has done so in a constitutionally effective manner. (Doc. 62.) Pursuant to Defendant's motion, the Court held a *Faretta* hearing on July 14, 2020. (Docs. 64, 65.) Based on that hearing, the record, and the relevant law, the Court FINDS that, at this time, Defendant does not want to waive his right to counsel and assert the right to represent himself, nor has he done so in a constitutionally effective manner. The Court further FINDS that Defendant does not want new counsel to be appointed to represent him and has not shown good cause for new counsel to be appointed. The Court will therefore decline to remove Gregory M. Acton as Defendant's counsel at this time.

**I. Factual Background and Procedural History**

On January 29, 2019, the Government filed a Criminal Complaint against Defendant Thomas Abeyta, charging him with aggravated sexual abuse in Indian Country in violation of 18 U.S.C. §§ 1153, 2241(a)(1), and 2246(2)(A).  (Doc. 1.)  At his initial appearance on that date, the Court noted that the financial affidavit for the appointment of counsel with Defendant's name at the top was not filled out, and "Refusing Attorney" was written at the bottom.  (Doc. 54 at 4.)  The Court therefore asked Defendant, "Is it your intention to refuse appointment of counsel even if you're eligible?" and Defendant answered "yeah."  (*Id.*)  The Court then told Defendant that, if he wanted to represent himself, the Court would have to hold a hearing to determine if he could constitutionally do so.  (*Id.*)  The Court indicated that it would appoint counsel in the interim so that Defendant would "have someone he can talk with" regarding "whether or not he wants to persist in his idea of representing himself."  (*Id.* at 4-5.)

At his preliminary hearing on January 30, 2019, Defendant's court-appointed lawyer James Loonam reported that Defendant had refused to have any "substantive conversation" with Mr. Loonam about the case, other than to tell Mr. Loonam that he "did not sign up for representation."  (Doc. 56 at 2.)  After advising Defendant that he had the right to represent himself if he chose to do so "in a knowing and voluntary way," the Court had a fairly extensive dialogue with Defendant about self-representation.  (*Id.* at 3-13.)

Defendant confirmed that he understood his right to a jury trial.  (*Id.* at 5.)  He said he understood that there are rules and statutes that apply to his case, but he did not understand how they are important.  (*Id.* at 5-6.)  He said he had never looked at the Federal Rules of Evidence or the Federal Rules of Criminal Procedure.  (*Id.* at 8.)  He said he did not understand that if he represented himself he might make a mistake an attorney would not make, but he would "look into it."  (*Id.* at 6, 9-10.)

Defendant stated that he had never been diagnosed with a mental illness or brain injury, that he had graduated from high school, and that he had never worked in a legal area or seen a criminal trial. (*Id.* at 7-8.) He said it did not make sense to him why it would not be a good idea for someone to think he knows how trials work based on television. (*Id.* at 8.)

Defendant said he did not understand that an experienced attorney would represent the Government in this case, but he did understand that an attorney could tell him about defenses he might not know about. (*Id.* at 10.) He said he "somewhat" understood that, if he represented himself and was convicted, he would not be able to claim on appeal that his attorney had made a mistake. (*Id.* at 10-11.)

Defendant said he "somewhat" understood that the decision to represent himself might be a bad one even if it was knowing and voluntary. (*Id.* at 11-12.) However, he said he did not understand that, if he represented himself, he would have to follow the rules about how to behave in the courtroom, and only "[s]ome ways" understood that if he did not, the Court could force him to have an attorney. (*Id.* at 12-13.)

After this dialogue, the Court stated that it had concerns about Defendant's competency and ordered an evaluation. (*Id.* at 13-14.) The Court appointed Mr. Loonam as Defendant's "standby counsel," which the Court explained is an attorney who does not run the defendant's case but is available to give the defendant advice if he asks for it or if the defendant is making a mistake.[1] (*Id.* at 14.)

On March 29, 2019, a notice was filed that on February 18, 2019, Defendant refused to participate in a competency evaluation with a local psychologist. (Doc. 12.)

---

[1] However, Mr. Loonam actually and necessarily functioned as Defendant's full counsel throughout his tenure because Defendant made no effort to defend himself or "run" his own case. Further, when the Court appointed Gregory M. Acton as substitute counsel on March 11, 2020, the Court did not limit the scope of his representation. (Docs. 40, 41.)

3

At a status conference on April 3, 2019 at which Defendant was present, Mr. Loonam said that Defendant had had a substantive conversation with Mr. Loonam after he was indicted but refused to speak to Mr. Loonam the day before or the day of the conference. (Doc. 57 at 3.) However, after speaking with Defendant off the record during the conference, Mr. Loonam stated that Defendant was "okay with me addressing the Court as his attorney" and had no objection to the Court ordering a competency evaluation at a federal Bureau of Prisons medical facility. (*Id.* at 8.) Shortly afterward, the Court ordered the competency evaluation to which Defendant had agreed at the conference. (Doc. 15.)

In her Competency Evaluation Report, filed November 8, 2019, Dr. Miriam Kissin noted Defendant's report that he was an average student, had difficulty reading in high school, and had worked as a caregiver and lawn care provider. (Doc. 18 at 3-4.) Dr. Kissin assessed Defendant's cognitive abilities to be at least average. (*Id.* at 6.) She diagnosed him with antisocial personality disorder and substance use disorders. (*Id.* at 7.)

According to Dr. Kissin, Defendant acknowledged that the charges against him are serious, constitute felonies, and could lead to incarceration if he is convicted. (*Id.*) Dr. Kissin quoted Defendant as saying, "the judge is making me be [Mr. Loonam's] client." (*Id.* at 8.) She further noted Defendant's statements that he "would prefer another attorney" because he disagreed with Mr. Loonam's assessment of the case; he could "talk . . . better" with a female attorney; and, he wanted to see if his mother would get him a private attorney. (*Id.* at 9-10.)

On February 19, 2020, Mr. Loonam filed a Motion to Determine Counsel based on Defendant's persistent refusal to communicate with him. (Doc. 33 at 1-2.) At a March 4, 2020 hearing on the motion, Defendant told the Court that, "from the beginning," he had "been trying to ask for a different attorney." (Doc. 60 at 3.) He also stated that he and his mother were planning

4

to get him "a lawyer-lawyer." (*Id.* at 5.) The Court told Defendant that, if he was able to hire a lawyer, that lawyer could represent him.[2] (*Id.*) Meanwhile, the Court explained, it was going to appoint a new lawyer to represent him pursuant to his request, but it would only do so once. (*Id.* at 5-6.) On March 11, 2020, the Court allowed Mr. Loonam to withdraw as Defendant's counsel and appointed Mr. Acton in his stead. (Docs. 39-41.)

On April 1, 2020, Mr. Acton filed an Unopposed Motion for Status Conference and for *Faretta* Hearing on Defendant's behalf. (Doc. 45.) In the motion, Mr. Acton asked the Court "to convene a status conference and potentially a *Faretta* hearing to determine whether [Defendant] is, in fact, waiving his right to counsel and if so, whether he is making such waiver knowingly and intelligently." (*Id.* at 1.) In support of this request, Mr. Acton explained that, shortly after his appointment as Defendant's counsel, he made an appointment to meet with Defendant at the Cibola County Detention Center; however, at the time of the appointment, Defendant refused to see him. (*Id.*) Mr. Acton then made an appointment for a telephone call with Defendant, but at the time of the appointment Defendant refused to speak to him. (*Id.* at 1-2.)

At a status conference on May 6, 2020, Mr. Acton informed the Court that Defendant continued to refuse to have any substantive conversations with him. (Doc. 48.)

At another status conference on June 22, 2020, Defendant was present but refused to respond to or acknowledge the Court when it addressed him. (Doc. 53.)

On July 14, 2020, the Court held a *Faretta* hearing on the record via videoconference, at which Defendant was present.[3] (Doc. 65 at 1, 3.) At the hearing, Mr. Acton stated that, after the

---

[2] To date, there is nothing in the record indicating that Defendant has hired a private attorney to represent him.

[3] In holding two status conferences on May 6, 2020 (Doc. 48) and June 22, 2020 (Doc. 53) and a *Faretta* hearing on July 14, 2020 (Doc. 65), the Court has granted all of the relief requested in Defendant's Unopposed Motion for Status Conference and for *Faretta* Hearing, filed April 1, 2020. (Doc. 45 at 1, 3-4.)

June 22, 2020 status conference, he again tried to meet with Defendant at the detention facility, but Defendant declined to see him, stating, "He's not my attorney." (*Id.* at 4-5.)

The Court informed Defendant that it was holding the hearing because "some of the things that [he had] said and done during this case suggest[ed] that [he] may want to waive [his] right to have an attorney represent [him] in this case and, instead, choose to represent [himself]." (*Id.* at 5.) The Court advised Defendant of what it would consider in deciding whether he was waiving his right to counsel and asserting his right to represent himself, and, if so, whether he was doing so in a constitutionally effective way. (*Id.* at 6-10.) In light of Defendant's prior history of refusing to communicate with counsel and the Court, the Court specifically told Defendant how it would interpret his silence if he refused to answer the Court's questions. (*Id.*)

The Court advised Defendant at some length of his rights, the nature of the charges against him, the range of punishments he faces if convicted, the existence of possible defenses and mitigating circumstances, his obligation to abide by the rules of evidence, procedure, and courtroom decorum, and the risks, disadvantages, and dangers of self-representation. (*Id.* at 11-26.) The Court repeatedly asked Defendant if he understood what the Court was telling him. (*Id.*) The Court also asked Defendant whether he wanted Mr. Acton to represent him. (*Id.* at 25.) And finally, the Court asked Defendant directly, "do you want to give up your right to be represented by an attorney and represent yourself instead?" (*Id.* at 25-26.) However, Defendant "steadfastly refused to respond, in any way, to any of the Court's questions" and "absolutely refused to communicate with the Court," though the Court gave him ample time to do so and had "no doubt" that he could hear everything that was said. (*Id.* at 26-27.)

After explaining why "[i]t's a very bad idea not to talk to your attorney" and urging Defendant to communicate with Mr. Acton, the Court ruled that it would not remove Mr. Acton

as Defendant's counsel and would not find that Defendant had waived his right to counsel, because he had not clearly and unequivocally indicated that he wanted to represent himself. (*Id.* at 24-25, 29-31.) The Court added that if Defendant wanted to "communicate to the Court [his] preference to represent [himself]" after thinking about what he had been told at the hearing, he could send the Court a letter or tell Mr. Acton so that Mr. Acton could ask for another hearing.[4] (*Id.* at 31.)

Defendant's jury trial is currently set for December 7, 2020. (Doc. 67.)

## II. Legal Standards

A criminal defendant has a Sixth Amendment right to be represented by an attorney at every stage of the proceedings against him, and, if he cannot afford one, he has the right to have one appointed for him free of charge. *Gideon v. Wainwright*, 372 U.S. 335, 339-40 (1963). A defendant has the right to receive reasonably effective assistance from his attorney. *Strickland v. Washington*, 466 U.S. 668, 686-88 (1984).

Alternatively, a defendant has a right under the Sixth Amendment to choose to represent himself. *Faretta*, 422 U.S. at 819. However, for a court to find that a defendant has effectively waived his right to counsel and invoked his right to proceed *pro se*, certain conditions must be met. First, the defendant must be competent to stand trial. *Maynard v. Boone*, 468 F.3d 665, 676 (10th 2006).[5] Second, the defendant must make a clear and unequivocal request to represent himself. *United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017). Third, the request must be timely, *id.*, and fourth, it must be voluntary. *United States v. Hamett*, 961 F.3d 1249, 1255 (10th Cir.

---

[4] To date, the Court has received no letter from Defendant, and Mr. Acton has not requested another *Faretta* hearing on Defendant's behalf.

[5] *Cf. United States v. DeShazer*, 554 F.3d 1281, 1290 (10th Cir. 2009) ("[T]he district court was not compelled to find Mr. DeShazer competent to waive his right to counsel simply because the court had found him competent to stand trial"; however, "a court may constitutionally permit a defendant to represent himself so long as he is competent to stand trial.").

2020); *United States v. Hansen*, 929 F.3d 1238, 1249 (10th Cir. 2019); *United States v. Williamson*, 859 F.3d 843, 862 (10th Cir. 2017). Finally, to be effective, a request to waive the right to counsel and proceed *pro se* must be "knowing and intelligent" at the time it is made. *Hamett*, 961 F.3d at 1255, 1262; *Hansen*, 929 F.3d at 1249. In evaluating whether a request satisfies these requirements, courts must "indulge in every reasonable presumption against waiver" of the right to counsel. *Hamett*, 961 F.3d at 1255; *Simpson*, 845 F.3d at 1046.

To determine whether a defendant has waived his right to counsel and asserted his right to represent himself in a constitutionally effective way, courts usually hold a comprehensive, formal inquiry known as a "*Faretta* hearing." *Hamett*, 961 F.3d at 1255. At a *Faretta* hearing, the court's examination of the defendant must be "penetrating and comprehensive," and the court "must investigate as long and as thoroughly as the circumstances of the case before [it] demand." *Von Moltke v. Gillies*, 332 U.S. 708, 723–24 (1948). In deciding whether to grant a request for self-representation, courts should also consider the defendant's age, education, and past experiences with the legal system, the complexity of the charges against him, and the stage of the proceedings. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Hansen*, 929 F.3d at 1251; *Williamson*, 859 F.3d at 862.

### III. Analysis

As discussed below, the Court has considered all of the foregoing requirements in light of the *Faretta* hearing held on July 14, 2020 in finding that Defendant does not want to waive his right to counsel and invoke the right to represent himself and has not done so in a constitutionally effective manner.

**A.     Defendant is competent to stand trial.**

To effectively waive the right to counsel and assert the right to represent himself, a defendant must first be competent to stand trial. *Maynard*, 468 F.3d at 676. Here, the Court found Defendant to be competent to stand trial on December 9, 2019, (Doc. 24), and Defendant was advised of that finding at his *Faretta* hearing. (Doc. 65 at 7.)

**B.      Defendant has not made a clear and unequivocal request to represent himself.**

Next, to be effective, a request to waive one's right to counsel and proceed *pro se* must be clear and unequivocal. *Simpson*, 845 F.3d at 1046. The requirement of a "clear and unequivocal expression of a request for self-representation . . . protect[s] not only the defendant but also the trial court." *Id.* at 1046–47 (quotation marks omitted). "Defendants are protected against inadvertently waiving counsel through their occasional musings on the benefits of self-representation." *United States v. Burton*, 698 F. App'x 959, 962 (10th Cir. 2017) (quotation marks and alteration omitted). And, trial courts "are protected against defendants' attempts to manipulate the rights to counsel and self-representation." *Id.*

As the *Simpson* court explained,

> [w]ithout a clear and unequivocal request, the court would face a dilemma, for an equivocal demand creates a potential ground for reversal however the trial court rules. If the court determines that the defendant wants to proceed pro se, the defendant can assert a violation of the right to counsel; if the court provides counsel, the defendant can assert a violation of the right to proceed pro se. By requiring the self-representation request to be clear and unequivocal, we prevent the trial court from having to guess at the defendant's intent.

845 F.3d at 1047 (citations omitted).

Notably,

> [t]he refusal to communicate with counsel does not necessarily imply a desire to represent oneself. It may result from a desire for different counsel; or it may reflect a decision not to participate in the proceedings, letting counsel do what he feels he must but not deigning to acknowledge the legitimacy of what is going on.

9

*United States v. Loya-Rodriguez*, 672 F.3d 849, 857 (10th Cir. 2012).  The refusal to communicate with counsel is a particularly doubtful signal of a desire to proceed *pro se* where the defendant also refuses to communicate with the court, because "self-representation . . . would entail communicating with the court and with government counsel."  *Id.* at 857–58.

Moreover, even when a defendant appears to affirmatively request self-representation, his "other statements or actions may render the request[] unclear or ambiguous."  *Simpson*, 845 F.3d at 1048.  Thus, the Tenth Circuit has found no clear and unequivocal request for self-representation where the defendant took "vacillating positions which continued until just six days before the case was set for trial," *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976), where the defendant wanted to represent himself only if certain conditions were met, *Stallings v. Franco*, 576 F. App'x 820, 823 (10th Cir. 2014), and where the defendant's request "simultaneously appear[ed] to request self-representation but add[ed] a qualification that confuse[d] what the defendant want[ed]." *Simpson*, 845 F.3d at 1048–49 (citing *United States v. Callwood*, 66 F.3d 1110, 1114 (10th Cir. 1995)).

A defendant's refusal to clarify a potential ambiguity can also support a finding that a request for self-representation is not clear and unequivocal.  In *Loya-Rodriguez*, for example, the defendant wrote a letter to the trial court in which he stated, "I want to communicate, if I can, personally and verbally, during the following hearings, with the Court, and in front of the Judge. I want to communicate without the help of an attorney."  672 F.3d at 858.  The Tenth Circuit observed that the letter could fairly be read more than one way and said "nothing about communicating with the jury, nor does it explicitly request permission to appear pro se at trial." *Id.*  The appellate court further noted that, at the next hearing after it received the letter, the trial court "gave [the d]efendant an opportunity to speak (and clarify his wishes)" but the defendant

10

"did not respond." *Id.* "[G]iven [the d]efendant's silence in that context," the *Loya-Rodriguez* court held, the trial court was entitled to find that the defendant's letter had not clearly and unequivocally invoked his right of self-representation. *Id.* at 858-59.

Here, prior to his *Faretta* hearing, Defendant sometimes seemed to want to waive his right to counsel and represent himself. (*See, e.g.*, Doc. 54 at 4 (at initial appearance, Defendant indicated that he intended to refuse appointment of counsel); Doc. 56 at 2 (at preliminary hearing, Mr. Loonam reported that Defendant said he did not sign up for representation); Doc. 33 at 2 and Doc. 57 at 3 (Defendant refused to talk to Mr. Loonam); Doc. 45 at 1-2, Doc. 48, and Doc. 65 at 4-5 (Defendant refused to talk to Mr. Acton).) At other times, however, he appeared to want to be represented by an attorney. (*See, e.g.*, Doc. 57 at 3 (Defendant had a substantive conversation with Mr. Loonam after indictment); *id.* at 8 (Defendant permitted Mr. Loonam to address the Court "as his attorney"); Doc. 18 at 9-10 (Defendant told evaluator he "would prefer another attorney"); Doc. 60 at 3 (Defendant told the Court he had been trying from the beginning to get a new attorney).)

In this regard, importantly, Defendant's only affirmative statements that could fairly be interpreted as a request to procced *pro se* were made at the very beginning of the case, before the Court first advised him of the risks, dangers, and disadvantages of self-representation. (*See generally* Docs. 54, 56.) After that time, when he spoke on the subject at all, he spoke in terms of wanting a different attorney, not proceeding without one. True, after that time, he generally refused to communicate with his court-appointed attorneys; however, as noted above, "[t]he refusal to communicate with counsel does not necessarily imply a desire to represent oneself." *Loya-Rodriguez*, 672 F.3d at 857. Thus, at the very least, Defendant's "vacillating positions" before his *Faretta* hearing made it unclear whether he wished to proceed without counsel; more

plausibly, they suggested that if he ever had wished to proceed *pro se*, the wish did not survive the Court's early warnings about the dangers and disadvantages of self-representation. *Bennett*, 539 F.2d at 51.

Nevertheless, in light of the ambiguity his inconsistent positions had created, the Court held a *Faretta* hearing at which it asked Defendant directly whether he wanted to waive his right to counsel and represent himself in these proceedings. (Doc. 65 at 25-26.) Defendant refused to respond to the question. (*Id.*) Defendant's refusal to respond is particularly telling for at least three reasons. First, as the *Loya-Rodriguez* court noted, self-representation would entail substantial communication with the prosecutor and the court. 672 F.3d at 857-58. Here, however, Defendant demonstrated an unwillingness to communicate with the Court regarding even the very basic question of whether he wants to proceed without counsel.

Second, the Court asked the question only after it had advised Defendant in considerable detail of his rights and the conditions that must be met for a waiver of counsel and invocation of the right to represent oneself to be effective. (*See generally* Doc. 65.) Thus, Defendant's refusal to respond to the question was as fully informed as possible under the circumstances.

Third, before asking the question, the Court specifically advised Defendant:

> [y]our past words and actions have been unclear and inconsistent about whether you want to represent yourself. So *if you do not answer me when I ask you if you want to waive your right to counsel and to represent yourself instead, I will find that you do not want to do so*.

(Doc. 65 at 7 (emphasis added).) In other words, Defendant knew that the Court would interpret his refusal to respond to mean that he does not want to waive his right to counsel and represent himself. The Court therefore finds it eminently reasonable to rely on "Defendant's silence in that context," *Loya-Rodriguez*, 672 F.3d at 858, and to conclude that Defendant does not in fact want to proceed *pro se*. For all of the above reasons, the Court finds that Defendant does not want to

waive his right to counsel and represent himself in these proceedings and has not made a clear and unequivocal request to do so.

**C.     Because Defendant has not made a clear and unequivocal request to represent himself, the Court need not determine the timeliness of any such request.**

To be constitutionally effective, a request to waive one's right to counsel and proceed *pro se* must be timely, that is, it must be made before a jury is impaneled and not for purposes of delay. *Simpson*, 845 F.3d at 1053; *United States v. Tucker*, 451 F.3d 1176, 1180-81 (10th Cir. 2006). As discussed in Section III.B., *supra*, Defendant has not made a clear and unequivocal request to waive his right to counsel and represent himself. As such, the Court need not determine whether any such request would be timely. However, the Court does note its finding, at the *Faretta* hearing, that Defendant's ambiguous words and actions up to this point, including his frequent refusals to communicate with his counsel and the Court, have been "obstinate and manipulative." (Doc. 65 at 29.) This finding would likely be relevant if the Court were later called upon to decide whether a clear request for self-representation is untimely because made "for the purpose of delay." *Simpson*, 845 F.3d at 1046; *Tucker*, 451 F.3d at 1180-81.

**D.     Because Defendant has not made a clear and unequivocal request to represent himself, the Court need not determine whether any such request would be voluntary.**

To be constitutionally effective, a request to waive one's right to counsel and proceed *pro se* must also be voluntary. *Hamett*, 961 F.3d at 1255. "[W]hether a defendant's waiver of counsel is voluntary" generally "turns on whether the defendant's objections to his counsel are such that he has a right to new counsel." *United States v. Taylor*, 113 F.3d 1136, 1140 (10th Cir. 1997) (citing *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987)). "[The] court must be confident the defendant is not forced to make a 'choice' between incompetent counsel or appearing

pro se." *Id.* "However, a refusal without good cause to proceed with able appointed counsel" will be considered voluntary. *Id.* (quotation marks omitted).

Here, because Defendant has not made a clear and unequivocal request to waive his right to counsel and represent himself, the Court need not determine whether any such request would be voluntary. However, the Court does find, with confidence, that Defendant is not being forced to choose between proceeding with incompetent counsel and proceeding *pro se*. *Taylor*, 113 F.3d at 1140. At his *Faretta* hearing, the Court forewarned Defendant that it would be asking him if he wanted Mr. Acton to represent him, and if not, why not. (Doc. 65 at 7-8.) The Court further advised Defendant that, if there was a "good reason" why Mr. Acton should not represent him, he would have the right to a different court-appointed attorney. (*Id.*) The Court also informed Defendant that the record up to that point did not show a good reason why Mr. Acton should not represent him, so the Court would not be able to find a good reason if Defendant did not answer its questions. (*Id.* at 9.)

Nevertheless, Defendant refused to respond when the Court asked him whether he wanted Mr. Acton to represent him. (*Id.* at 25.) Defendant also chose to remain mute when the Court gave him an opportunity to address "anything with regard to your right to counsel." (*Id.* at 26.) In these circumstances, the Court finds that Defendant does not want new counsel to be appointed, that there is no good cause why Mr. Acton should not continue to represent Defendant, and that Defendant is not being forced to make an unconstitutional choice between Mr. Acton and no counsel at all. *See Padilla*, 819 F.2d at 955.

**E.  Because Defendant has not made a clear and unequivocal request to represent himself, the Court need not determine whether any such request would be knowing and intelligent.**

Finally, to be constitutionally effective, a request to waive one's right to counsel and represent oneself must be knowing and intelligent at the time it is made. *Hamett*, 961 F.3d at 1255, 1262. To be knowing and intelligent, a request for self-representation does not necessarily need to be wise. *Hansen*, 929 F.3d at 1249; *United States v. Turner*, 287 F.3d 980, 984 (10th Cir. 2002). Rather, such a request is knowing and intelligent if the defendant is fully aware of the nature of his right to counsel and the consequences of giving up that right. *Patterson v. Illinois*, 487 U.S. 285, 292 (1988). Among other things, the defendant must know and understand: (a) the nature of the charges against him, including the laws he is charged with violating; (b) the range of punishments he faces if he is found guilty; (c) the existence of possible defenses to the charges against him and mitigating circumstances; (d) the risks, dangers, and disadvantages of representing himself; and, (e) the need for him to personally follow the rules of evidence, procedure, and courtroom decorum. *Von Moltke*, 332 U.S. at 723–24; *Hamett*, 961 F.3d at 1255-56; *Hansen*, 929 F.3d at 1250, 1257. These are sometimes referred to as the "*Von Moltke* factors." *Hamett*, 961 F.3d at 1255.

Because Defendant has not made a clear and unequivocal request to waive his right to counsel and represent himself, the Court need not determine whether any such request would be considered knowing and intelligent at the time it was made. However, even if Defendant *had* made a clear and unequivocal request for self-representation, the record does not establish that Defendant has ever had sufficient knowledge and understanding of the *Von Moltke* factors for any such request to be knowing and intelligent. In fact, the record affirmatively demonstrates that Defendant does *not* understand some of these factors.

At his January 30, 2019 preliminary hearing, Defendant said he does not understand: (a) the importance of the rules and statutes that apply to his case, (Doc. 56 at 5-6); (b) that, if he

represents himself, he may make a mistake an attorney would not make, (*id.* at 9-10); (c) why it would not be a good idea for someone to think he knows how trials work based on television, (*id.* at 8); (d) that an experienced attorney will represent the Government, (*id.* at 10); and, (e) that, if he represents himself, he will have to follow the rules about how to behave in the courtroom. (*Id.* at 12.) Defendant also said he only "somewhat" understands that: (a) if he represents himself and is found guilty, he will not be able to claim on appeal that his attorney made a mistake, (*id.* at 10-11); (b) the decision to represent himself may be a bad one even if it is knowing and voluntary, (*id.* at 11-12); and, (c) if he represents himself but does not follow the rules about how to behave in the courtroom, the Court could force him to have an attorney. (*Id.* at 12-13.)

Nor did Defendant indicate, at his *Faretta* hearing, that he has since developed a better understanding of any of these issues. At the *Faretta* hearing, the Court explained that the record up to that point did not show that Defendant understood everything he needed to understand to effectively waive his right to counsel and proceed *pro se*. (Doc. 65 at 10.) The Court therefore advised Defendant:

> [i]f you don't answer me when I ask if you understand . . . , I will not find, for purposes of this hearing, that you understand . . . , and I will not find that a request to represent yourself, if you make one, is knowing and intelligent.

(*Id.*) Nevertheless, each time the Court asked Defendant if he understood what the Court was telling him, he refused to respond. (*See generally id.*) In these circumstances, even if any of Defendant's words or actions up to this point could be construed as a request to waive the right to counsel and proceed *pro se*, the Court could not find the request to be knowing and intelligent at the time it was made.[6]

---

[6] Nor, at this juncture, could the Court properly "do more to ensure that [any] waiver of counsel was knowing and intelligent." *Hansen*, 929 F.3d at 1260. At his *Faretta* hearing, Defendant made it unmistakably clear that he intended to refuse to respond to the Court's questions or otherwise communicate with the Court in any way, no matter what he

16

**F.      No case-specific factor alters the Court's conclusion that Defendant has not effectively invoked the right to represent himself**.

Finally, the Court's consideration of Defendant's age, education, and past experiences with the legal system, the complexity of the charges against him, and the stage of the proceedings does not alter its conclusion that Defendant has not effectively waived his right to counsel and asserted the right to represent himself.  *Tovar*, 541 U.S. at 88; *Hansen*, 929 F.3d at 1251; *Williamson*, 859 F.3d at 862.  Defendant is thirty-seven years old and has received no education beyond high school, where he had difficulty reading.  (Doc. 1 at 1; Doc. 18 at 2-4; Doc. 56 at 7.)  He has never worked in a legal field or seen a criminal trial.  (Doc. 18 at 4; Doc. 56 at 7-8.)  While the charges against him are not inordinately complex, they are serious, felony charges, and he faces an estimated guideline imprisonment range of 12 years 7 months to 15 years 8 months if convicted at trial.  (Doc. 65 at 16-17.)  His jury trial is presently scheduled for December 7, 2020.  (Doc. 67.)  None of these case-specific factors support a finding that Defendant has effectively waived his right to counsel and asserted his right to proceed *pro se*.

## IV.  Conclusion

For all of the foregoing reasons, and as further stated on the record at the *Faretta* hearing held on July 14, 2020, the Court FINDS that, at this time, Defendant does not want to waive his right to counsel and assert the right to represent himself, nor has he done so in a constitutionally effective way.  In particular, Defendant has not made a clear and unequivocal request to waive his right to counsel and proceed *pro se*.  Also, to the extent any of his words or actions to date could be construed as a request to waive the right to counsel and proceed *pro se*, the request was not knowing and intelligent at the time it was made.  The Court further FINDS that Defendant does

---

was advised or asked or how many opportunities he was given to speak.  (*See generally* Doc. 65.)  In these circumstances, "do[ing] more" would have been pointless at best and coercive at worst.

not want new counsel to be appointed; there is no good cause why Mr. Acton should not continue to represent him; and, he is not being forced to make an unconstitutional choice between Mr. Acton and self-representation.  The Court therefore declines to remove Mr. Acton as Defendant's counsel at this time.

      IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE