**In the United States District Court
for the District of New Mexico**

———————

Case No. 19-CR-0401-TC

———————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

THOMAS ABEYTA,

*Defendants*

———————

**MEMORANDUM AND ORDER**

A New Mexico jury convicted Thomas Abeyta, an enrolled member of the Navajo Nation, of two sex crimes in violation of 18 U.S.C. § 1153 and § 2241. Abeyta has timely moved for a new trial, Doc. 135, asserting that the jury plan used to summon his panel failed to pull a fair cross-section of his peers.

Abeyta's motion for a new trial invokes Fed. R. Crim. P. 33. Relief under that rule is discretionary, permitting district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *see also United States v. Ybarra Cruz*, 982 F.3d 1284, 1294 (10th Cir. 2020); *United States v. Wagner*, 951 F.3d 1232, 1254 (10th Cir. 2020). Abeyta has not met that standard.

Abeyta's jury pool was called using the District of New Mexico's ordinary procedures, *i.e.*, through voter registration lists. Although Abeyta is correct that he has a Sixth Amendment right to a fair and impartial jury—which requires "a jury pool comprised of a fair cross section of the community," *United States v. Gault*, 141 F.3d 1399, 1402 (10th Cir. 1998)—his trial, and the manner in which his jury pool was called, satisfied that requirement. *See United States v. Thompson*, 19-1610-MV-4, Doc. 291, at *6 (D.N.M. June 25, 2021)

Most Sixth Amendment challenges to the fair cross-section requirement focus on a given community's alleged underrepresentation in the jury pool. On that score, Abeyta's claim fails. Federal courts, including the Tenth Circuit, generally approve of voter registration lists as a method of selecting jury venires. *Gault*, 141 F.3d at 1402. To show that the District's particular use of voter registration lists violated the Sixth Amendment's fair cross-section requirement, Abeyta must show

1

that (i) the group alleged to be excluded is a distinctive group in the community; (ii) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (iii) the underrepresentation is due to systematic exclusion of the group in the jury-selection process. *United States v. Yazzie*, 660 F.2d 422, 426 (10th Cir. 1982) (restating the test from *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Abeyta's motion focuses almost exclusively on the first factor. There is no dispute that Native Americans are a distinctive group in the larger community. But he does not address the second or third factors. Nor could they have helped him. Based on the best available data, *see* Doc. 136 at 6, the current disparities in the proportion of Native Americans called for jury duty in this District are even lower than those which the Tenth Circuit has previously deemed permissible. *Gault*, 141 F.3d at 1403; *see also Thompson*, 19-1610-MV-4, Doc. 291, at *7 (finding no constitutional underrepresentation based on current jury pool numbers). As a result, any disparities here were not so "gross or marked as to establish . . . that the representation of [Native Americans] on the jury panels is not fair and reasonable under the Sixth Amendment." *Gault*, 141 F.3d at 1403. This failure of the second element is dispositive of any underrepresentation argument and necessarily precludes the ability to assess the third factor.

Abeyta's reply changes course, clarifying that he does not actually allege any *underrepresentation* of the Native Americans in his pool. Instead, he argues that his panel should have been drawn exclusively from the Navajo Nation, explaining the "quarrel is not with the sample," but "with the population." Doc. 140 at 1, 3. But Abeyta cites no law requiring that a jury comprised of only Navajo Nation or Native American jurors is required. That is not surprising, as it contravenes the notion that a jury is a democratic and representative unit of society as a whole and the Supreme Court's "understanding that the jury 'be a body truly representative of the community' . . . and not the organ of any special group or class.'" *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975) (quoting *Glasser v. United States*, 315 U.S. 60, 85-86 (1942)).

Abeyta's recitation of a sentence from *Strauder v. West Virginia*, 100 U.S. 303 (1880), does not support his claim. *Contra* Doc. 140 at 2. Specifically, he argues that a jury including non-Navajo jurors deprives him of a jury of his peers because *Strauder* described a jury as "a *body of men* composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, [or] persons having the same legal status in society as that which he holds." 100 U.S. at 307 (emphasis added); *but see Taylor*, 419 U.S. at 536 & n.19 (abrogating *Strauder*'s dicta that suggested women could be constitutionally excluded from a jury). While Abeyta accurately quotes language from *Strauder*, the Court's holding undermines the race-conscious proposition that Abeyta offers. *Cf. Alexander v.*

2

*Sandoval*, 532 U.S. 275, 282 (2001) (rejecting a litigant's focus on a case's language instead of its holding). The Court held that the West Virginia law, which expressly excluded jurors based solely on their race, violated the defendant's right to equal protection. 100 U.S. at 310. In other words, *Strauder*, and the cases that have since relied on it, rejected the race-conscious rule that Abeyta seeks here. It did not suggest (and subsequent cases have firmly rejected the notion) that a criminal defendant is "entitled to a jury of any particular composition." *Taylor*, 419 U.S. at 538.

    For these reasons, Abeyta's Motion (Doc. 135) is DENIED.

    It is so ordered.


Date:  September 7, 2021            s/Toby Crouse
                                                Toby Crouse
                                                United States District Judge